(No. 26574.—
Rosetta C. Schultz, Appellant, *vs.* Annie Pikesh, Appellee.

*Opinion filed March 17, 1942—Rehearing denied June 10, 1942.*

Harry I. Hannah, Thomas R. Figenbaum, and George B. Rhoads, for appellant.

Robert I. Dove, and John J. Baker, for appellee.

Mr. Justice Shaw delivered the opinion of the court:

The appellant, Rosetta C. Schultz, and the appellee, Annie Pikesh, are the owners of adjoining tracts of land in Shelby county and the question of drainage over these

two tracts and a road which borders them has long been a matter of dispute and litigation. The latest and present phase of that controversy was started by Mrs. Schultz, the appellant, who filed a complaint seeking a mandatory injunction to compel the removal of a certain low concrete wall, which Mrs. Pikesh had erected on her land to protect it against surface water. In substance, each party claimed that the surface water ought to run over the land of the other, and in its simplest aspects that one question is all that is involved in this lawsuit. The case was tried in the circuit court without a jury, and after hearing the testimony of twelve witnesses on one side and thirteen on the other, and after receiving in evidence various surveys and plats, the chancellor dismissed the complaint for want of equity.

The properties of these parties are bordered by an east and west road which is frequently inundated to its considerable damage. About forty years ago the then commissioner of highways endeavored to correct this condition by constructing a ditch or a drain across the land owned by appellee and one of her predecessors in title. This proposal was met by separate suits for injunction, which were consolidated and resulted in a consent decree. This decree provided for the installation of a 12-inch tile commencing at a bridge in the road and leading thence across appellee's land to a creek some distance to the southeast. The decree also provided that all existing ditches were to be abandoned and that John Pikesh should have the right to construct an embankment along the west side of the drain. These orders of the court were carried out pursuant to the agreement of the parties, who had consented to the entry of the decree and the matter seems to have remained in this condition for many years.

As we understand the record, it was not until about 1933 that any change was made in the situation. During the intervening thirty years, the water was carried off

through the drain except at times of excess flood when it would overflow the road and the lands of both parties. The evidence concerning this situation was conflicting but of very little actual value on behalf of either party because the maps and plats in evidence, which everyone admits are correct, are quite conclusive of the controversy. In 1933 the appellant endeavored to prevent the washing of her land and created an obstruction consisting of posts, wires, stumps, etc., at a point which the plat shows was the lowest point of natural drainage. About a year after the creation of this obstruction, appellee's land began to be eroded and she, in her turn, created an obstruction to this washing. Both places continued to be eroded at times of excessive overflow, and in 1939, the appellee constructed the concrete wall which is here in question.

This wall is just inside the north fence line of appellee's property, is parallel with the road, and approximately 150 feet long. The evidence indicates that it is not as high as the crown of the road and no higher than the ground level as it existed before the erosion started in 1933. There is nothing at all in the evidence which would require a finding that this wall is any greater obstruction to natural drainage than the obstruction created by the plaintiff on her own land.

As stated above, there were twelve witnesses on one side of this lawsuit and thirteen on the other, but it cannot well be said that any definite conclusion could be arrived at one way or the other from the testimony of these witnesses as to the natural contour or natural surface drainage of these two tracts. From the contour and profile maps produced in evidence, however, it is perfectly clear that the lowest point of natural drainage is on appellant's land and that the wall in question was nothing more than a defensive measure against obstruction which appellant created. If no one had ever created any obstruction anywhere the land of appellant would have taken the greater burden of

drainage, and this is probably the reason for the consent decree of 1902. When, in 1933, appellant sought to change the natural course of drainage by erecting obstructions on her own land, she left herself in very poor position to complain of a corresponding but no greater obstruction on the land of appellee.

On oral argument of this cause in open court attorneys for each party expressly stated that no question was involved but one of fact, and we are unable to find any particular in which the chancellor erred in his findings in this regard. In fact, we think that any other findings than those made by him, in view of the surveys in evidence, would have been subject to serious question. We are convinced there is no prejudicial error in this record and the decree of the circuit court of Shelby county will therefore be affirmed.

*Decree affirmed.*